WEST CENTRAL PACKING INCORPORATED v A F MURCH
COMPANY

Docket No. 53111. Submitted June 8, 1981, at Grand Rapids.—De-
cided September 11, 1981. Leave to appeal applied for.

West Central Packing Incorporated brought an action against the
A. F. Murch Company, alleging breach of an oral contract for
the sale of goods. A verdict was returned in favor of the
plaintiff. Kent Circuit Court, George R. Cook, J., entered judg-
ment for the plaintiff. The defendant appeals, alleging that the
trial court erred in failing to instruct the jury on the defense of
the statute of frauds under the Uniform Commercial Code, in
instructing the jury relative to modification of a written agree-
ment contrary to the provisions of the code, in failing to grant
its motion for a directed verdict on the plaintiff's theory of
recovery based on the liability of an undisclosed agent, and in
admitting a summary of the transactions between the parties.
*Held:*

1. The trial court erred in failing to instruct the jury on the
statute of frauds defense. It is the duty of the trial court to

REFERENCES FOR POINTS IN HEADNOTES
[1] 75 Am Jur 2d, Trial § 604.
[2] 75 Am Jur 2d, Trial §§ 398, 402.
[3] 73 Am Jur 2d, Statute of Frauds § 605.
   75 Am Jur 2d, Trial § 404.
[4] 67 Am Jur 2d, Sales § 100.
   72 Am Jur 2d, Statute of Frauds § 155.
   Construction and application of UCC §§ 2-201 [3] [c] rendering
      contract of sale enforceable notwithstanding statute of frauds
      with respect to goods for which payment has been made and
      accepted or which have been received and accepted. 97 ALR3d
      908.
   Construction and effect of UCC Art 2, dealing with sales. 17 ALR3d
      1010.
[5, 6] 67 Am Jur 2d, Sales § 210.
   72 Am Jur 2d, Statute of Frauds § 274.
[6] 67 Am Jur 2d, Sales § 204.
[7] 67 Am Jur 2d, Sales § 99.
   72 Am Jur 2d, Statute of Frauds § 134.
[8] 29 Am Jur 2d, Evidence § 458.

instruct on all material issues raised by the pleadings and the evidence. Questions of fact regarding such a defense are to be determined by the jury. The record reveals that the documents submitted did not establish unequivocally a contract for the sale of goods or the sufficiency of the defendant's signature, nor was acceptance of the goods by the buyer clearly established.

2. The trial court properly denied the defendant's motion for a directed verdict based on the statute of frauds defense or that the verdict was against the great weight of the evidence.

3. The trial court erred in instructing the jury that the original agreement could be modified orally even though the original agreement specified that changes must be in writing.

4. The trial court properly denied the defendant's motion for a directed verdict on the plaintiff's theory of liability based on undisclosed agency.

5. The trial court properly admitted a summary of the transactions between the plaintiff and the defendant as a summary of voluminous writings.

Reversed and remanded.

1. Trial — Jury Instructions.

A trial court must instruct a jury on all material issues raised by the pleadings and the evidence.

2. Trial — Statute of Frauds — Defenses.

Questions of fact involving a defense of a statute of frauds are to be resolved by a jury.

3. Sales — Uniform Commercial Code — Contracts — Questions of Fact — Statutes.

The sufficiency of a writing as unequivocally establishing a contract for the sale of goods under the Uniform Commercial Code is a question of fact to be determined by a jury (MCL 440.2201[1]; MSA 19.2201[1]).

4. Sales — Uniform Commercial Code — Statute of Frauds — Acceptance of Goods.

A contract which does not satisfy the requirements of the statute of frauds provision of the Uniform Commercial Code as pertains to the sale of goods may be enforceable where a buyer as defined by the code receives and accepts the goods (MCL 440.2103[1][a], 440.2201[3][c], 440.2606; MSA 19.2103[1][a], 19.2201[3][c], 19.2606).

5. SALES — UNIFORM COMMERCIAL CODE — STATUTE OF FRAUDS — CONTRACTS — MODIFICATION OF CONTRACTS — STATUTES.

A modification of a contract for the sale of goods must satisfy the requirements of the statute of frauds section of the Uniform Commercial Code (MCL 440.2209[3]; MSA 19.2209[3]).

6. SALES — UNIFORM COMMERCIAL CODE — CONTRACTS — MODIFICATION OF CONTRACTS — STATUTES.

A signed agreement under the Uniform Commercial Code pertaining to the sale of goods which excludes modification except by a signed writing cannot be otherwise modified (MCL 440.2209[2]; MSA 19.2209[2]).

7. SALES — UNIFORM COMMERCIAL CODE — CONTRACTS — AGENCY — STATUTE OF FRAUDS — STATUTES.

The fact that a party to a contract acted as an undisclosed agent for another person does not of itself create a valid claim against the agent or his principal where none otherwise exists and does not waive the requirements of the statute of frauds provision of the Uniform Commercial Code pertaining to contracts for the sale of goods (MCL 440.2201; MSA 19.2201).

8. EVIDENCE — VOLUMINOUS WRITINGS — RULES OF EVIDENCE.

A summary of voluminous writings may be admitted into evidence where the originals cannot be examined conveniently in court (MRE 1006).

*Idema & Pawlowski,* for plaintiff.

*Miller, Johnson, Snell & Cummiskey* (by *Jon G. March),* for defendant.

Before: D. F. WALSH, P.J., and MACKENZIE and J. R. ERNST,* JJ.

D. F. WALSH, P.J. Plaintiff instituted a suit based on the breach of an oral contract for the sale of goods under the Uniform Commercial Code. Defendant appeals from a jury verdict in the amount of $81,712.10, rendered in favor of plaintiff.

Plaintiff, a Michigan corporation, purchases apples from growers and then packages and distrib-

* Circuit judge, sitting on the Court of Appeals by assignment.

utes them for the fresh fruit market or for processing. Defendant, a subsidiary of the J. M. Smucker Company during its dealings with plaintiff, operates an apple processing plant in Paw Paw, Michigan. Plaintiff had been a major supplier of juice apples to defendant for a number of years.

In mid-1976, defendant agreed to provide sliced apples to the Sweetheart Toasted Pie Company. On September 16, 1976, plaintiff and defendant executed a "broker's agreement" in which plaintiff agreed to use its best efforts to procure four million plus pounds of "peeler" apples for defendant during the 1976 harvest season. This agreement, drafted by plaintiff's attorney, contained the following two provisions:

> "This contract expressly covers only the so-called 1976 crop of Jonathan apples; however, it is the intent of the parties to create a continuing relationship in accordance with the responsibilities and intent herein expressed; provided, however, that each year the charges, fees and quantities of apples shall be renegotiated between the parties on a yearly basis.
>
> * * *
>
> "No change or modification of this contract shall be valid unless the same be in writing and signed by all the parties hereto."

Defendant purchased all of the fruit provided by plaintiff during the course of the 1976 harvest season even though the Sweetheart Toasted Pie Company failed to fulfill its share of the separate bargain with defendant. Plaintiff was aware of this breach of contract between defendant and its buyer. In attempting to dispose of the surplus fruit acquired from plaintiff, defendant entered into a contract with U. S. Fruit Service Company on May 5, 1977. U. S. Fruit Service Company agreed to

purchase a minimum of 1.4 million pounds of finished apple slices at 25 cents per pound. The agreement also provided that beginning in the fall of 1977, defendant would process apples for U. S. Fruit Service company at a fee of $100 per ton, increased later to $107 per ton. Defendant's general manager testified that the apples to be processed in the fall of 1977 were owned by U. S. Fruit, not A. F. Murch Company.

The exact arrangements between plaintiff and defendant for the supply of additional apples subsequent to the expiration of the 1976 agreement was the subject of major dispute at trial. Eugene Rasch, plaintiff's general manager, claimed that in the fall of 1977 he met with two representatives of defendant and negotiated an extension of the 1976 contract. Rasch stated that defendant's representatives verbally agreed to continue to buy apples from plaintiff for another year pursuant to the terms of the 1976 "broker's agreement". It is undisputed that at this meeting Rasch informed defendant's representatives that under no circumstances would he deal directly with U. S. Fruit Service Company because of its poor reputation in the industry for paying its bills.

Three witnesses for defendant expressly denied the existence of any verbal agreement to extend the 1976 contract between the parties. Bruce Kulesza, defendant's general manager, recalled discussions with plaintiff with regard to defendant's deal to process apples for U. S. Fruit Service Company. Kulesza testified that he told plaintiff that A. F. Murch Company would not be in a position to buy any apples from plaintiff and that it was up to plaintiff to decide whether it would pursue a business relationship with U. S. Fruit.

From December, 1977, through June, 1978,

plaintiff delivered apples to defendant for processing. U. S. Fruit Service Company paid for the apples delivered at defendant's plant. When plaintiff first received payment from U. S. Fruit, Rasch called defendant for an explanation. Paul Sjolin, defendant's chief accountant, told Rasch that "U. S. Fruit would be paying for the apples". Plaintiff received only partial payment for the apples delivered in May and no payment for the June deliveries. U. S. Fruit Service Company ceased operations in July, 1978. Approximately 900,000 pounds of apples were not paid for by U. S. Fruit. The amount due for such shipments was $81,712.10.

Reed Wagstaff, district director of the J. M. Smucker Company, testified that after U. S. Fruit Service Company went out of business, Rasch called him to determine whether U. S. Fruit owed defendant any money. When told that U. S. Fruit owed defendant approximately $24,000 for unpaid processing fees, Rasch indicated that U. S. Fruit owed plaintiff about $80,000. Rasch suggested that plaintiff and defendant work together to collect the amounts owed to each of them by U. S. Fruit.

At trial, plaintiff claimed that the sales to defendant were either an extension of the parties' original written contract of September 16, 1976, or totally separate, individual sales of goods. Plaintiff also claimed that if defendant was acting as an agent of U. S. Fruit Service, such principal/agency relationship was not fully disclosed to plaintiff and, therefore, defendant was still liable as a principal. Defendant raised a statute of frauds defense. The trial court, however, refused to instruct on that defense and denied defendant's motions for a directed verdict under both counts of the complaint. After a three-day trial, the jury

returned a verdict in favor of plaintiff for the full amount of the claim. The trial court subsequently denied defendant's motions for judgment notwithstanding the verdict and/or a new trial.

Defendant first argues that the trial court erred in failing to instruct the jury on the statute of frauds defense. We agree and reverse.

It is the duty of the trial court to instruct the jury on all material issues raised by the pleadings and the evidence. *Winchester v Meads,* 372 Mich 593; 127 NW2d 337 (1964). In cases involving the defense of the statute of frauds, questions of fact are to be resolved by the jury. See 12 Michigan Law & Practice, Statute of Frauds, § 113, p 533, and cases cited therein.

The statute of frauds provision of the Uniform Commercial Code (UCC), reads as follows:

"(1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500.00 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

\* \* \*

"(3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable

\* \* \*

"(c) with respect to goods for which payment has been made and accepted or which have been received and accepted (section 2606)." MCL 440.2201(1), (3)(c); MSA 19.2201(1), (3)(c).

Acceptance is defined under the UCC in the following manner:

"(1) Acceptance of goods occurs when the *buyer*

"(a) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity; or

"(b) fails to make an effective rejection (subsection (1) of section 2602), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or

"(c) does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by him." MCL 440.2606(1); MSA 19.2606(1). (Emphasis supplied.)

A buyer is a "person who buys or contracts to buy goods". MCL 440.2103(1)(a); MSA 19.2103(1)(a).

Both parties to this lawsuit recognize that the UCC is applicable because the suit involves a sale of goods. Since the amount of the sale is in excess of $500, the contract must satisfy the statute of frauds provision of the code. That is, there must be a writing or an applicable exception in order to render the oral agreement enforceable. By refusing to instruct the jury on the statute of frauds, the trial court ruled, in effect, that as a matter of law the defense was not supported by the evidence produced at trial. Defendant claimed that the defense was applicable for two reasons: first, because the writing requirement was not satisfied and, second, because there could not have been any "acceptance" by the defendant since defendant was not the buyer.

Under MCL 440.2201(1); MSA 19.2201(1), the writing must evidence a contract for the sale of goods, it must be "signed" and it must specify a

quantity. In support of its claim that the writing requirement was satisfied, plaintiff introduced into evidence numerous shipping invoices or delivery tickets for the apples delivered during May and June, 1978. Each of these preprinted forms contained defendant's written name after the standard, typed phrase "Sold To". However, plaintiff admitted that this form was used whenever the fruit was delivered to a party, even though the goods were not sold to that party. Plaintiff's representative also stated that the same form containing "Sold To A. F. Murch" was used when apples owned by plaintiff were delivered to defendant for processing only.

Plaintiff also submitted the "scale ticket" issued by defendant. These tickets indicated the number of boxes of apples and their total weight and were prepared whenever any apples arrived at defendant's plant. Some of the "scale tickets" were signed by defendant's employees. Plaintiff's representative stated that these tickets would not indicate necessarily that the apples had been sold to defendant.

The testimony of plaintiff's own witness, therefore, was conflicting as to whether the documents evidenced a contract of sale. The delivery tickets accompanied any delivery of goods, not only deliveries to buyer, and the scale tickets certified the weight of the goods, not the buyer of them. Further, the delivery tickets were not signed by defendant. The scale tickets contained the signature of the employees that were responsible only for recording the weight of shipments.

In light of the conflicting testimony produced at the trial, the issue of the sufficiency of the writing was a question of fact for the jury. The documents themselves did not establish unequivocally a con-

tract for the sale of goods. The sufficiency of defendant's signature was also open to question.

Plaintiff argues, however, that even if there were no sufficient writing, the partial performance exception to the writing requirement was satisfied by virtue of defendant's receipt and acceptance of the goods. MCL 440.2201(3)(c); MSA 19.2201(3)(c). In support of this claim plaintiff presented testimony that all of the apples were delivered to defendant, who then processed them. Defendant also was the party that scheduled some of the deliveries.

While acknowledging that the apples were delivered to defendant's processing plant, defendant presented evidence that they were never "accepted" because the code requires acceptance by a "buyer", one who contracts to buy goods. Defendant claimed that it merely took delivery of the items and processed them for the real buyer, U. S. Fruit Service Company.

Jack Franz, president of U. S. Fruit Service Company, was deposed as a witness for plaintiff. Franz stated that his company purchased apples from plaintiff beginning in late 1977 and continuing through June, 1978. It was U. S. Fruit Service Company that paid for the apples delivered at defendant's processing plant. Franz stated that the payments were accompanied by remittance or grading sheets. The letterhead on the remittance sheets bore the name U. S. Fruit Service and following the caption "Seller", "West Central" had been written in. The remittance sheet showed the receiving date and the number of the receiving invoice and set forth the number of pounds of juice apples and the number of pounds of peeler apples. The sheet also showed the total payment and what appears to be the check number belonging to U. S. Fruit Service Company.

Franz also stated that he initially placed delivery orders with plaintiff. However, this method of scheduling deliveries did not work well because they were not regulated with other deliveries at the plant. Therefore, Franz agreed with defendant that defendant would contact plaintiff about scheduling deliveries to the processing plant. Mr. Hank Girr, defendant's employee, testified that when he called plaintiff to order a delivery he mentioned that "it would be to the account of Jack Franz". On one occasion Franz himself picked up a load of apples at plaintiff's facility and brought them to defendant's plant.

In light of the above testimony, it is clear that there was a major dispute as to whether defendant was in fact the "buyer" of the goods. There was abundant testimony on both sides of this issue. The UCC requires that acceptance be made by the "buyer", not merely by anyone taking delivery of the goods. Where the identity of the buyer is a crucial factor and conflicting testimony was presented by both parties, it was for the jury to decide this question of fact. We conclude that the trial court erred in removing the statute of frauds defense from the jury's consideration.

In light of our disposition on the above issue, we summarily reject defendant's claim that the trial court erred in failing to grant a directed verdict based on the statute of frauds defense or that the jury verdict was against the great weight of the evidence.

On remand, the trial court need not instruct the jury on the doctrine of unequivocal referability. We reject defendant's argument that in order to prevail on the partial performance exception, plaintiff must demonstrate that defendant's conduct in taking delivery of the apples unequivocally

refers to the alleged oral contract. All of the Michigan cases cited in support of this doctrine are based on pre-Uniform Commercial Code law. The UCC makes no mention of this equitable principle, and the code's official commentary clearly indicates that this doctrine is no longer the law with regard to the sale of goods. The applicable Commentary reads as follows:

"Receipt and acceptance either of goods or of the price constitutes an unambiguous overt admission by both parties that a contract actually exists. * * * The overt actions of the parties make admissible evidence of the other terms of the contract necessary to a just apportionment. This is true even though the actions of the parties are not in themselves inconsistent with a different transaction such as a consignment for resale or a mere loan of money." MCL 440.2201; MSA 19.2201, Comment 2.

Under the UCC, therefore, partial performance can be shown by the receipt and acceptance of the goods, notwithstanding any other possible explanations for defendant's actions. The receipt and acceptance of the goods constitute an objective manifestation of the parties' assent to a contract. Accord, *Gerner v Vasby*, 75 Wis 2d 660, 669; 250 NW2d 319 (1977).

Defendant also cites as error the following jury instruction:

"A written contract may be modified by a subsequent agreement of the parties. This is so even though the original contract stipulates that it is not to be changed, except by an agreement in writing. The controlling factor is the intention of the parties. You can determine that intention not only from any specific writings, but also from the oral statements, conduct and acts of the parties."

Defendant argues that this instruction is contrary to the UCC because the modification of a written agreement must still satisfy the statute of frauds provision of the code. We agree.

Even though MCL 440.2204(1); MSA 19.2204(1) states that a contract for the sale of goods may be formed by any manner of expression by the parties, this provision is qualified expressly by the statute of frauds section. See *Nelson v Hy-Grade Construction & Materials, Inc,* 215 Kan 631; 527 P2d 1059 (1974). The requirements of the statute of frauds section of the UCC must be satisfied if the contract as modified is within its provision. MCL 440.2209(3); MSA 19.2209(3). A signed agreement that excludes modification except by a signed writing cannot be otherwise modified. MCL 440.2209(2); MSA 19.2209(2). See *U S Fibres, Inc v Proctor & Schwartz, Inc,* 358 F Supp 449 (ED Mich, 1972), *aff'd* 509 F2d 1043 (CA 6, 1975).

The parties' original agreement required that any modification be in writing. Any extension of the 1976 agreement, therefore, must satisfy the statute of frauds provisions in order to be enforceable. Alternatively, if the deliveries in 1978 were to be regarded as separate agreements (unrelated to the extension of the 1976 broker's agreement), they must also conform to the statute of frauds section of the code. The court's instruction that an oral extension was enforceable was erroneous and should not be given on retrial.

Defendant next argues that the court erred in failing to grant defendant's motion for a directed verdict on plaintiff's second theory of recovery— liability of an undisclosed agent. Defendant claims that since plaintiff was fully aware of U. S. Fruit Service Company's involvement in the transactions, defendant could not be held liable as its

"undisclosed" agent. Defendant also argues that the court's instruction on this count of the complaint was in error. The court instructed the jury as follows:

"An agent is a substitute or deputy appointed by another person, called the principal, to act for or in the place of the principal and who undertakes to transact some business or manages some affairs for the principal. The legal rule is that an agent who deals with third persons but fails to disclose the fact of his agency may become personally liable for his acts on behalf of the undisclosed principal. The duty rests upon the agent to disclose his agency."

Defendant relies on U. S. Fruit's payment as the dispositive fact which, allegedly, fully informed plaintiff that it was the principal party in the business relationship with plaintiff. Mere fact of payment for the deliveries, however, does not establish unquestionably that U. S. Fruit was the real contracting party. An alternative arrangement between defendant and U. S. Fruit (wholly separate from any principal/agent relationship), which could have required that payments be made by U. S. Fruit, was possible particularly since testimony at the trial indicated that plaintiff was aware of other business dealings between those two parties. Also, the undisputed evidence that plaintiff did not want to deal with U. S. Fruit and communicated this fact to defendant bolsters its claim that it believed that defendant was the actual purchaser of the goods. Moreover, defendant's conduct in scheduling deliveries and receiving the goods is consistent with the actions of an agent. We conclude that the trial court properly left it for the jury to decide whether defendant was an undisclosed agent of U. S. Fruit.

We point out, however, that even if defendant were subject to liability as an agent of U. S. Fruit, the transaction is still subject to the UCC statute of frauds requirements. The principle of undisclosed agency itself does not create a valid claim against either agent or principal where none otherwise exists. Therefore, on retrial the court should instruct the jury that the code provision with regard to the statute of frauds also must be met under this alternative theory of liability.

Defendant finally contends that the court erred in admitting into evidence a list containing a summary of the transactions between plaintiff and defendant, prepared by plaintiff's bookkeeper specifically for litigation. We find no error here. The exhibit, a summary of the deliveries of goods from December, 1977, through June, 1978, was based on the invoices and scale tickets already admitted into evidence. It was used to determine a proper measure of damages. As a summary of voluminous writings, the exhibit was admissible under MRE 1006.

Reversed and remanded for a new trial.